UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

RANDY W. DUCK                                                    PETITIONER
ADC #162229

v.                          No. 4:20-CV-01301-KGB-JTR

DEXTER PAYNE, Director
Arkansas Division of Correction                                 RESPONDENT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the entry of this Recommendation. The failure to timely file objections may result in waiver of the right to appeal questions of fact.

## I.  Introduction

Pending before the Court is a § 2254 Petition for a Writ of Habeas Corpus filed by Petitioner Randy Duck ("Duck"), a prisoner in the Arkansas Division of Correction. *Doc. 2*. In his Petition, Duck challenges his Rape conviction in Union County Circuit Court on the grounds that he received constitutionally ineffective

assistance of counsel in violation of his Sixth Amendment right to a fair and impartial jury trial. *Doc. 2*, at 1–13.

Respondent Dexter Payne, in his Response, argues that all of Duck's habeas claims should be dismissed because they were either procedurally defaulted or reasonably adjudicated in state court. *Doc. 12*. Duck filed a Reply Brief.[1] *Doc. 18*. Thus, the issues are now joined and ready for disposition.

## II.  Background

During a multi-day jury trial in Union County Circuit Court, evidence established that, on the night of January 19, 2015, Duck's wife, Renae, woke to find Duck in bed with Renae's mentally challenged 17-year-old daughter, B.P., whose underwear and pajama bottoms were on the floor. When Renae asked what was going on, she received ambivalent responses from B.P. and Duck, who left the room to bathe. Renae collected the underwear worn by Duck and B.P.

After consulting with her pastor, Renae called the Union County Sheriff's Office and reported what happened. An investigator went to Renae's house, and collected the underwear worn by Duck and B.P. and the bed sheet. The criminal investigation led to Duck being charged with rape. *Duck v. State*, 509 S.W.3d 5, 7–8 (2016).

---

[1] Before filing his Reply, Duck filed a Motion to Amend his 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus. *Doc. 16*. The Court found that Duck failed to provide a plausible basis for any of those putative claims. Accordingly, the Court denied Duck's Motion to Amend. *Doc. 17*.

During Duck's trial, the jury heard testimony regarding forensic evidence and B.P.'s "medical history of some retardation, cerebral palsy, [and] a history of limited seizure activity." *Id.*, at 8. B.P.'s doctor testified that, in his opinion, B.P. was "not capable of making her own medical decisions." *Id*. The jury also heard direct testimony from B.P, aided by the use of girl and boy dolls. *Id*.

On September 29, 2015, the jury convicted Duck of Rape. Later the same day, the trial judge sentenced him to fifteen (15) years in the Arkansas Division of Correction, as recommended by the jury. *Doc. 12-2*, at 70–71, 79–80.

### III. Discussion

In a § 2254 habeas action, a state prisoner may only challenge his conviction or sentence on the ground that it was in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). Furthermore, such a habeas petitioner must exhaust all remedies available in the state courts before filing his § 2254 action in federal court. 28 U.S.C. § 2254(b)(1).

In his habeas Petition, Duck alleges his trial counsel provided ineffective assistance by: (1) failing to seek to exclude certain jurors for cause; (2) conceding, during voir dire, that B.P. had mental deficiencies; (3) failing to object to the prosecution's reference to B.P. as the "victim"; (4) failing to object to the chain of custody of Duck's underwear; (5) failing to interview and call witnesses to provide character evidence; (6) failing to call a doctor and nurse to testify that they found no

3

physical evidence that B.P had been raped; and (7) failing to poll the jury after it returned a guilty verdict. *Doc. 2*, at 4–11.

Duck fully exhausted five of these claims, but failed to properly raise claims two and three in his Rule 37 proceeding. Apart from procedurally defaulting those two claims, *all seven* of Duck's habeas claims fail *on the merits*. Thus, the Court elects to decide all of Duck's habeas claims, on the merits; thereby avoiding the need to conduct a complex procedural default analysis on the second and third claims in his habeas Petition.

For the reasons explained below, the Court recommends that Duck's habeas Petition be DISMISSED, with prejudice, and all pending motions be DENIED as moot.

## A.    Standard Of Review For Ineffective Assistance Of Counsel

A federal habeas court is obligated to conduct a "limited and deferential review" of the state court's full merits adjudications of ineffective assistance of counsel claims. *Sera v. Norris*, 400 F.3d 538, 542 (8th Cir. 2005). Under this standard, Duck must prove that the Arkansas Court of Appeals' decision "was contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1)–(2). Further, in evaluating the state court's findings of fact, a federal habeas court must

accept those findings as presumptively correct, and the habeas petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Stenhouse v. Hobbs*, 631 F.3d 888, 891 (8th Cir. 2011) (quoting 28 U.S.C. § 2254(e)(1)).

Finally, under *Strickland v. Washington*, 466 U.S. 668 (1984), Duck has the even heavier evidentiary burden of proving that the Arkansas Court of Appeals' rejection of his ineffective assistance of counsel claims was "unreasonable," *i.e.*, its decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fair-minded disagreement." *Harrington v. Richter*, 562 U.S. 86, 101–03 (2011).

Meeting this high bar is a daunting task for a habeas petitioner because "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether the determination was unreasonable – a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (internal quotations and citations omitted). For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 562 U.S. at 101. "Surmounting *Strickland*'s high bar [for evaluating ineffective-assistance claims] is never an easy task," and "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Id*. at 105 (citations omitted).

The standards created by *Strickland* and § 2254(d) "are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id*.

## B. The Five Ineffective Assistance Of Counsel Claims Properly Raised and Exhausted By Duck In His Rule 37 Proceeding All Fail On the Merits[2]

### 1. Duck's Trial Counsel Was Not Constitutionally Ineffective For Failing To Challenge For Cause Two Women Who Were Seated, Without Objection, On the Jury

Duck argues his trial counsel allowed two women on the venire panel to be seated as jurors, without making any objections based on their inability to be fair and unbiased jurors. The first such juror, Hope Bean ("Bean") was the criminal case manager for Jeffery Sawyer ("Sawyer"), a part-time prosecutor in *Ouachita County*, which is in the same Judicial District as Union County. However, nothing in the record suggests that Sawyer had any role or involvement in Duck's case, and Bean disclosed during voir dire that she worked for Sawyer and was "pro state." She also

---

[2]The trial court denied all five ineffective assistance of counsel claims in Duck's Amended Rule 37 Petition, without holding an evidentiary hearing. *Doc. 12-5*, at 55–64, 72–78. As indicated previously, Duck's Amended Rule 37 Petition did not properly raise: (1) his second habeas claim that his trial counsel provided ineffective assistance by conceding, during voir dire, that B.P. had mental deficiencies; or (2) his third claim that his trial counsel failed to object to the prosecution's reference to B.P. as the "victim."

The trial court and the Arkansas Court of Appeals considered and rejected, on the merits, the five properly presented ineffective assistance of counsel claims raised in Duck's Amended Rule 37 Petition. *Duck v. State*, 2020 Ark. App. 161, 596 S.W.3d 571 (2020). None of those determinations were contrary to clearly established federal law or unreasonable in light of the evidence presented.

disclosed that one of family members had previously been murdered. *Doc. 12*, at 21–23.

When Duck's trial counsel questioned her during voir dire, Bean testified that she could be fair and impartial toward Duck. She was later seated on the jury, without Duck's counsel objecting or exercising a preemptory strike. *Doc. 12*, at 23–24. Finally, after she was seated, Bean approached the bench and voiced concern to the court about her ability to be impartial. The trial judge engaged in the following colloquy with her:

> Ms. Bean, can you tell me you can set aside what it is you do and listen to the evidence that is presented from the witness box and the physical evidence that may be introduced and base your verdict solely upon that evidence?
>
> Bean replied: Yes, I can do that."

*Doc. 12*, at 24. Based on her answer Bean was seated as a juror, with no objection from Duck's trial counsel. *Id.*

According to Duck, the other allegedly problematic juror was Ashley Nash ("Nash"), who was Sawyer's sister-in-law. *Doc. 12*, at 31. Nothing in the juror questionnaire required Nash to disclose that her brother-in-law, Sawyer, was a part-time prosecutor in Ouachita County. Furthermore, during voir dire, Nash was not asked any questions that required her to disclose that information. Apparently, the attorney who represented Duck in the Rule 37 proceedings made this discovery and used it as the basis for Duck's first ineffective assistance of counsel claim.

The Arkansas Court of Appeals later rejected this ineffective assistance of counsel claim on procedural grounds, without reaching the merits:

> [Duck] argues that the circuit court erred in denying his request for postconviction relief based on his claim that counsel was ineffective for failing to move to strike two jurors. He argues that two particular jurors have close ties with the prosecuting attorney's office—one with familial ties and the other through employment relations—and consequently were not qualified to serve as jurors. This court has previously held that a claim of ineffective assistance for failure to object to the seating of a juror is a challenge to the qualifications of the particular juror to serve, and such a claim is a direct attack on the verdict and not a cognizable claim in a petition for Rule 37.1 relief.

*Duck v. State*, 2020 Ark. App. 161, 6–7, 596 S.W.3d 571, 576 (2020)

Respondent acknowledges that the "bar imposed by the Arkansas Court of Appeals does not appear to be firmly established or regularly followed in the Arkansas cases, and so it is inadequate to support a defense of procedural default in this proceeding." *Doc. 12*, at 13–14. However, Respondent argues this Court can properly decide the merits of this ineffective assistance of counsel claim because the trial court properly adjudicated the merits of the claim in denying Rule 37 relief. *See* 28 U.S.C. § 2254(d)(1). *Doc. 12*, at 14–15, citing *Harrington v. Richter*, 562 U.S. 86, 98 (2011) and *Worthington v. Roper*, 631 F.3d 487, 496–505 (8th Cir. 2011) (holding that a trial court's postconviction adjudication of counsel's performance was an adjudication on the merits under 28 U.S.C. § 2254(d)(1)).

The trial court, in denying this ineffective assistance of counsel claim, on the merits, cited the following factors in support of its decision: (1) Duck was present

and his attorney consulted with him throughout voir dire (*Doc. 12-5*, at 73–74); (2) the jurors were all subject to voir dire examination; (3) none of the jurors gave false, misleading, or deceptive responses; (4) defense counsel exercised preemptory strikes to deselect certain prospective jurors; and (5) counsel for Duck and the prosecutor said the jury was "good." *Doc. 12-5*, at 74. Finally, the trial court noted that, at no point during the jury selection process, did Duck express any reservation about the jury's composition. The trial court concluded that it "should not label counsel ineffective merely because of possibly bad tactics or trial strategy in selecting the jury." *Doc. 12-5*, at 74.[3]

The trial court's ruling on this ineffective assistance of counsel claim is not inconsistent with any controlling Federal case law. Importantly, Duck has not presented any evidence of actual juror bias, and the United States Supreme Court has not clearly established that implied or presumed bias applies based on facts similar to the ones involved in this case. Finally, the Eighth Circuit has observed that

---

[3]In analyzing the merits of this ineffective assistance of counsel claim, the trial court distinguished *Williams v. Taylor*, 529 U.S. 420 (2000)(jury foreperson failed to disclose a 17-year marriage and four shared children with the key investigator and lead-off prosecution witness in a rape and murder trial) and *Miller v. Dormire*, 310 F.3d 600 (2002)(trial counsel waived a jury trial without Miller's consent and without informing Miller of his right to a jury trial), two of the cases Duck relied on to support the claim. In its analysis, the trial court anticipated and properly resolved the federal aspect of Duck's claim which he now raises in this habeas action. *Doc. 12-5*, at 58–60, 74–75.

Finally, after denying this claim on the merits, the trial court went on to hold that, because this claim was a "direct attack on the verdict [it was] not cognizable as a claim in a Rule 37.1 proceeding." Doc. 12-5, at 74.

its decisions have been "inconsistent as to whether juror bias may ever be presumed." *Sanders v. United States*, 529 F.3d 787, 791 (8th Cir. 2008).

In the absence of any clearly established contrary Federal law, Duck must establish that the trial court's findings were an unreasonable determination of the facts in light of the evidence. Because Duck has not made such a showing, he is not entitled to habeas relief on this ineffective assistance of counsel claim, which fails on the merits.

### 2. Trial Counsel Was Not Ineffective For Failing To Object To the Chain Of Custody Of Duck's Underwear

In denying Duck's Amended Rule 37 Petition, the trial court found that Duck had failed to make any plausible legal arguments in support of this chain of custody claim or that any evidence was tainted, tampered with, or otherwise not authentic. *Doc. 12-5*, at 75. Because all of Duck's arguments where conclusory and based on mere conjecture, the trial court held this ineffective assistance of counsel claim failed under the *Strickland* standard. *Doc. 12-5*, at 75.

While the Arkansas Court of Appeals noted "there were contradictions in the witnesses' testimony regarding the storage of the items," it affirmed the trial court's ruling, and rejected Duck's claim under Arkansas law:

> Minor uncertainties in the proof of chain of custody are matters to be argued by counsel and weighed by the jury, but they do not render the evidence inadmissible as a matter of law. Therefore, despite appellant's urging to the contrary, we find no reversible error on this point.

10

*Duck v. State*, 2020 Ark. App. 161, 8–9, 596 S.W.3d 571, 577–78 (2020).

The record supports the Arkansas Court of Appeals' determinations, and Duck has not cited any clearly established Federal case law contrary to its holding. Accordingly, Duck is not entitled to habeas relief on this ineffective assistance of counsel claim.

### 3. Duck's Trial Counsel Was Not Ineffective For Failing To Interview and Call Witnesses To Provide Character Evidence

Duck alleges that, during both the guilt and sentencing phases of his trial, his attorney was constitutionally ineffective because he failed to call a number of witnesses who "would have testified as to Duck's good character and reputation for truthfulness." *Doc. 2*, at 9. Duck also faults his trial counsel for not calling another witness, who allegedly would have provided testimony about Renae's "goal to 'set-up' Duck by orchestrating a false rape allegation in order to gain leverage in their divorce proceedings." *Doc. 2*, at 9. According to Duck, yet another witness allegedly would have testified about "B.P.'s conduct toward [the witness] that was revealing of her sexual knowledge." *Doc. 2*, at 9.

In rejecting this ineffective assistance of counsel claim, the trial court noted that Duck's attorney's decisions on calling witnesses was an important part of his trial strategy and rested on his communication with Duck about what those witnesses might say:

> Risks and benefits involved in presenting any certain witness were discussed, weighed and resolved between defendant and counsel as matters of strategic trial preparation and presentation. Counsel was obviously effective in sentencing inasmuch as defendant was subject to Class "Y" felony punishment (10 to 40 or life) and the jury only returned with a recommended sentence of fifteen (15) years. There was no prejudice as a result of trial counsel's strategy."

*Doc. 12-5*, at 75–76.

In Duck's Rule 37 appeal, the Arkansas Court of Appeals also rejected this ineffective assistance of counsel claim:

> [Duck] argues that counsel was ineffective for failing to call certain witnesses during the guilt phase of his trial. He claims that he was prejudiced by counsel's refusal to call witnesses to testify regarding his "good character and reputation for truthfulness" as well as to advance a theory that he was "set-up" and that Renae "orchestrat[ed] a false rape allegation in order to gain leverage in their divorce proceedings.

*Duck v. State*, 2020 Ark. App. 161, 9–10, 596 S.W.3d 571, 578 (2020). The Court noted the potential damage from opening the door to such character evidence:

> Here, despite [Duck's] contention that certain witnesses had "intimate knowledge" of his good character, the record demonstrates that putting on character witnesses would have opened the door to damaging testimony. The following statement in [Duck's] brief supports this finding: "The Court itself confirmed the fact that Renae Duck was a witness with obvious motive against Duck, being the alleged shooting of a firearm at her and other abusive conduct toward Renae Duck...." As such, we hold that [Duck] has failed to overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.

*Duck v. State*, 2020 Ark. App. 161, 10–11, 596 S.W.3d 571, 578 (2020).

The Court also addressed Duck's claim regarding his trial counsel's failure to call certain witnesses during the sentencing phase of his trial:

> Again, the decision not to call a particular witness is generally a matter of trial strategy and therefore is not cognizable in a Rule 37.1 proceeding. Moreover, although [Duck] argues that he was prejudiced by counsel's failure to call certain witnesses, we are unpersuaded. [Duck] was charged with a Class Y felony, which subjected him to a sentence range of ten to forty years, or life; however, [he] was sentenced to serve fifteen years' incarceration.

*Duck v. State*, 2020 Ark. App. 161, 11, 596 S.W.3d 571, 578 (2020).

In making this claim, Duck has not cited any clearly established Federal case law that is contrary to the Arkansas Court of Appeals' decision. Further, the record strongly supports the Court of Appeals' determinations that Duck was not prejudiced by his trial counsel's decisions on calling witnesses. Accordingly, because this ineffective assistance of counsel claim fails on the merits, Duck is not entitled to habeas relief.

### 4. Duck's Trial Counsel Was Not Ineffective For Failing To Call an Unidentified Doctor and Nurse To Testify That They Found No Physical Evidence Of Rape

In Duck's Amended Rule 37 Petition, he claims that Renae went "doctor shopping" and had B.P. examined by two unidentified medical providers who found no evidence of rape. *Doc. 12-5*, at 62–63. According to Duck, his trial counsel was ineffective because he failed to call these two unidentified medical providers as witnesses. In rejecting this claim, the trial court noted "bad trial strategy is not a

13

basis for relief under Rule 37." *Doc. 12-5*, at 76. Moreover, in his Rule 37 papers, Duck's attorney failed to: (1) identify the medical personnel who should have been called to testify; (2) proffer the anticipated medical testimony from those witnesses; or (3) explain how the asserted failure to call those witnesses prejudiced Duck. *Doc. 12-5*, at 76.

In affirming the trial court's denial of Rule 37 relief on this claim, the Arkansas Court of Appeals stated the following:

> [Duck] argues that counsel provided ineffective assistance based on the failure to present evidence of "doctor shopping" by Renae and that the circuit court clearly erred in finding to the contrary. Specifically, [Duck] alleges that Renae took B.P. to be examined by three medical professionals; two, a doctor and a nurse, both unnamed, concluded that B.P. displayed no physical evidence of sexual abuse or penetration. [Duck] contends that had counsel properly cross-examined Renae and elicited this testimony, there is a "reasonable probability that the jury would have concluded that no sexual activity took place at all between Duck and the alleged victim."

> The circuit court found that counsel's decision not to cross-examine Renae on the alleged doctor shopping was a matter of trial strategy. We agree. Where a decision by counsel was a matter of trial strategy, and that decision is supported by reasonable professional judgment, counsel's decision does not provide a basis for Rule 37.1 relief. Moreover, Carla Thomas, a sexual-assault nurse examiner at Children's Advocacy Center, testified that B.P.'s hymen had an abnormal notch that was indicative of abuse. Thomas further testified that the injury is consistent with sexual intercourse; "[s]omething had to pass through the labia and all the way to get into the vagina." In his argument, [Duck] does not provide any timeline as to when the examinations by the unidentified doctor and nurse occurred. We are left to speculate as to whether Thomas's examination was first, last, or in between and what, if any, significance that has. [Duck] additionally fails to identify the doctor and nurse and does not provide any details as to their alleged

> findings. Therefore, due to the lack of facts supporting his argument, we cannot say that counsel's decision was not based on reasonable professional judgment. Conclusory statements without supporting facts do not support the granting of postconviction relief.

*Duck v. State*, 2020 Ark. App. 161, 11–13, 596 S.W.3d 571, 578–79 (2020).

In his habeas Petition, Duck still fails to identify the medical professionals his counsel should have called as witnesses, or provide any facts to support this facially implausible claim. As the Court noted in *Shinn v. Ramirez*, 142 S. Ct. 1718, 1730 (2022), "only rarely may a federal habeas court hear a claim or consider evidence that a prisoner did not previously present to the state courts." Here, Duck has *done nothing*, in either his Rule 37 proceeding or in his habeas papers, to provide any of the facts necessary to show this claim might have merit.

The Arkansas Court of Appeals' resolution of this claim was not contrary to any clearly established Federal case law, nor was it based on an unreasonable determination of any facts. Accordingly, Duck is not entitled to habeas relief on this claim.

### 5.  Trial Counsel Was Not Ineffective For Failing To Poll the Jury

In Duck's Rule 37 proceeding, the trial court rejected Duck's argument that his attorney was ineffective for not moving to have the court poll the members of the jury on their verdict. According to the trial court, the only support for this claim was Duck's *speculation* about what *might* have happened if the jury had been polled.

15

*Doc. 12-5*, at 76.[4] The trial court also recited the powerful evidence supporting

Duck's guilt, which made a request to poll the jury, after it had reached and published

its guilty verdict, a meaningless formality:

> [Duck] has either forgotten or fails to recall that he confessed to law
> enforcement to having gotten into bed partially naked, under the sheets,
> with the victim [] on the night in question, that the victim was not
> clothed during their interlude and that the two of them were caught in
> such compromising position by the victim's mother.

> \*       \*       \*       \*

> Trial strategy included…a decision to avoid…inflaming the jury…by
> fiercely attacking a seriously developmentally disabled child witness
> on cross examination. Such trial strategy also include[d] ascertaining
> whether to open the door to proof of defendant's violent prior history
> including abuse of [Renae Duck], having previously shot a firearm at
> the victim's mother and other abusive conduct in which he engaged
> towards the victim's mother, in a reckless effort to claim that defendant
> is a man of good character.

*Doc. 12-5*, at 76–77.

The Arkansas Court of Appeals affirmed the trial court's decision

rejecting this claim:

> When the jury delivered its verdict finding [Duck] guilty of rape, the
> circuit court asked, "Ladies and gentlemen of the jury, is this your
> verdict, each of you so say all of you?" The record reflects that the
> jurors responded, "Yes." Given that affirmative response from the
> jurors, [Duck's] counsel declined to poll the jury.

---

[4] It appears Duck predicated this claim on a postconviction conversation he had with his
trial attorney who allegedly told Duck that two of the jurors told him they felt pressured by the
jury Foreman to reach a guilty verdict and that it was a "compromise verdict." Given the strong
evidence supporting Duck's guilt, such a conversation between Duck and his attorney seems
contrived and farfetched, especially since the record contains nothing to support this story. *Duck
v. State,* 2020 Ark. App. 161, 13, 596 S.W.3d 571, 579–80 (2020).

> Although [Duck] asserts that he was prejudiced by counsel's failure to poll the jury, he only speculates as to what may have occurred had the jury been polled. He fails to provide facts establishing prejudice. [Duck] does not contend that any of the individual jurors, during the collective response affirming the guilty verdict, showed outward signs of equivocation as to their vote. Bare assertions of ineffectiveness are not enough, and conclusory statements that counsel was ineffective will not sustain a Rule 37 petition. We are unconvinced by [Duck's] assertion that, had the jury been polled, there was a "reasonable probability that a mistrial would have been granted.

*Duck v. State*, 2020 Ark. App. 161, 13, 596 S.W.3d 571, 579–80 (2020).

In the Rule 37 proceeding, the trial court's findings and conclusions denying this ineffective assistance of counsel claim were not unreasonable. On appeal, the Arkansas Court of Appeals thoroughly reviewed the trial court's findings, cited and properly applied *Strickland v. Washington*, 466 U.S. 668 (1984), and determined this claim lacked merit. There was *nothing* unreasonable about any of those rulings. Accordingly, Duck is not entitled to habeas relief on this ineffective assistance of counsel claim.

### C. Duck's Two Ineffective Assistance Of Counsel Claims, Raised For the First Time In His Habeas Petition, Both Fail On the Merits

In Duck's habeas Petition, he asserts two ineffective assistance of counsel claims that were not raised in his Amended Rule 37 Petition. Respondent Payne argues that, because Duck procedurally defaulted those claims, they must be denied. *Doc. 12*, at 48–56. Rather than engaging in the complex legal analysis required to

17

determine if Duck procedurally defaulted those two ineffective assistance of counsel claims, I have concluded it is more efficient to analyze those claims on the merits.[5]

Under *Strickland*, Duck must establish that: (1) his counsel's performance fell below "an objective standard of reasonableness"; and, (2) his counsel's deficient performance resulted in prejudice. *Strickland*, 466 U.S. at 687-88.

Under the performance prong, counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," and the burden to show otherwise "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 17 (2013). "Surmounting *Strickland's* high bar is never an easy task." *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017) (citations omitted).

Under the prejudice prong, Duck must prove that, but for counsel's error, there is a reasonable probability that the result of the criminal proceeding would have been different. *Strickland*, 466 U.S. at 687-88, 694. The law is clear that the petitioner

---

[5] *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Trussell v. Bowersox*, 447 F.3d 588, 590-591 (8th Cir. 2006) (because neither the statute of limitations nor procedural default presents a jurisdictional bar to federal habeas review, both issues can be bypassed "in the interest of judicial economy"); *Kemp v. Hobbs*, 2012 WL 2505229 (E.D. Ark. June 28, 2012) (citing 28 U.S.C. § 2254(b)(2) and *McKinnon v. Lockhart*, 921 F.2d 830, 833 n. 7 (8th Cir. 1990) ("Where it is more efficient to do so, therefore, this Court may resolve [habeas] claims on the merits rather than navigating through a procedural-default thicket.")).

"bears the burden to meet [*Strickland's*] two standards." *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1910 (2017).

### 1. Duck's Trial Counsel's Statements and Questions During Voir Dire Did Not Constitute Ineffective Assistance Of Counsel

According to Duck, his trial counsel was ineffective in his questioning of prospective jurors during voir dire. Specifically, Duck alleges his trial counsel conceded an element of the crime, "mental defect," by stating during voir dire that B.P. was "a little kid who is challenged." *Doc. 12-2*, at 146. Duck also argues that his trial counsel asked prospective jurors inflammatory questions about rape.

First, Duck has not established deficient performance by his trial counsel. A review of the record makes it clear that Duck's trial counsel asked reasonable questions during voir dire that were aimed at determining if potential jurors had biases based on the nature of the alleged crime. *Doc. 12-2*, at 141–145. Nothing about those questions was inflammatory or otherwise improper.

Further, by acknowledging during voir dire that B.P. had mental deficiencies, Duck's trial counsel was merely informing the venire panel about an *undisputed fact* that would become obvious to the jury during the trial. This was *not* ineffective assistance of counsel.

Second, even if Duck could show deficient counsel performance, he has failed to establish any resulting prejudice. The prosecution introduced strong evidence to support the charge that Duck raped a mentally challenged minor. It is extremely

doubtful that the voir dire questions Duck's trial counsel asked the venire panel about rape had any impact on his subsequent conviction.

Further, his trial counsel's comment during voir dire that B.P. was "a little kid who is challenged," was *consistent with* what he knew would be the evidence presented during the trial. As the Arkansas Court of Appeals noted, the record contained ample evidence B.P. was "challenged." *Duck v. State*, 2020 Ark. App. 161, 5–6, 596 S.W.3d 571, 576 (2020).

Failure "to establish either *Strickland* prong is fatal to an ineffective-assistance claim." *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011). Because Duck has failed to establish deficient performance or prejudice related to this claim, he not entitled to habeas relief.

### 2. Duck's Trial Counsel Was Not Ineffective For Failing To Object To the Prosecution's Reference To B.P. As the "Victim"

In his habeas Petition, Duck alleges that his trial counsel was ineffective because he did not object when the prosecutor, during voir dire, referred to B.P. as a "victim." *Doc. 2*, at 7. This claim clearly fails on the merits.

The prosecutor referred to B.P. as a "victim" twice during voir dire: (1) "[t]he victim was seventeen when it happened, she is eighteen now" (*Doc. 12-2*, at 135); and (2) "[o]ur victim in this case was seventeen when it happened, she is eighteen years old now." *Doc. 12-2*, at 140.

Counsel's decision not to object, and potentially draw more attention to the "victim" comment, fell within an objective standard of reasonable professional judgment. Not every mistake in the course of a criminal trial rises to deficient performance. As the Court has repeatedly held, the Constitution only guarantees reasonably competent counsel, not perfect counsel. *Harrington v. Richter*, 562 U.S. 86, 110 ("[The Sixth Amendment] does not guarantee perfect representation, only a 'reasonably competent attorney.' " (quoting *Strickland*, 466 U.S. at 687)).

Duck also failed to establish that the two instances when the prosecutor referred to B.P. as "victim" resulted in any prejudice. Even the Arkansas law Duck relies on would does not support a finding of prejudice. *Doc. 2*, at 7, citing *Bateman v. State*, 2 Ark. App. 339, 621 S.W.2d 232 (1981) (relief not warranted when trial court judge referred to the prosecuting witness as "victim" instead of "alleged victim." "[W]e do not view that comment by the trial court as prejudicial even though the term should not have been used."). Finally, given these facts, the trial court likely would have denied any request for mistrial.

Considering the overwhelming evidence against Duck, it is unlikely the result of his criminal proceeding would have been different regardless of his counsel's performance related to this claim. Accordingly, because this ineffective assistance of counsel claim fails on the merits, Duck is not entitled to habeas relief.

## IV. Conclusion

None of the state court determinations made during Duck's Rule 37 proceeding were contrary to clearly established Federal law. Further, nothing about the state court's fact determinations was unreasonable in light of the evidence presented during the Rule 37 proceeding. A federal habeas court must accept those factual findings as presumptively correct, and the habeas petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Stenhouse v. Hobbs*, 631 F.3d at 891 (quoting 28 U.S.C. § 2254(e)(1)). Because Duck has failed to meet his burden of demonstrating those habeas claims have merit, all five of those habeas claims should be denied.

Finally, both of Duck's new ineffective assistance of counsel claims in his habeas Petition fail on the merits under *Strickland*, and should also be denied.

IT IS THEREFORE RECOMMENDED THAT:

1.    The Petition for a Writ of Habeas Corpus (*Doc. 2*) be DENIED, and this habeas action be DISMISSED, WITH PREJUDICE;

2.    A Certificate of Appealability be DENIED pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases; and

3.    All pending motions be DENIED as moot.

Dated this 26th day of September, 2022.


_____
UNITED STATES MAGISTRATE JUDGE